AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

FILED by _AF_ D.C.
JUL 19 2013
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| SEAN E. WAGNER | ) | Case No. |
| | ) | 13-8336-JMH |
| | ) | |
| | ) | |
| | ) | |
| _Defendant(s)_ | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __December 2005-August 2009__ in the county of __Palm Beach and Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC § 1349 | Knowingly and willfully conspired, combined, confederated, and agreed to commit offenses against the United States, to wit, to violate Title 18, United States Code, Sections 1343 (wire fraud) and 1346 (theft of honest services), in violation of Title 18, United States Code, Section 1349 |

This criminal complaint is based on these facts:

(See attached affidavit.)

☑ Continued on the attached sheet.

_Complainant's signature_

Special Agent Robert C. Koons
_Printed name and title_

_I find probable cause_
Sworn to before me and signed in my presence.

Date: __07/19/2013__

_Judge's signature_

City and state: __West Palm Beach, Florida__   Hon. James M. Hopkins, U.S. Magistrate Judge
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Robert C. Koons, being duly sworn, depose and state as follows:

1. I have been employed as a Special Agent with the United States Department of Defense ("DoD"), Office of Inspector General, Defense Criminal Investigative Service ("DCIS") since November 2006. In my capacity as a Special Agent with DCIS, I have investigated various violations of federal law, including fraud and violations of Title 18, United States Code, Sections 1343 and1346 and related statutes. At the beginning of my employment with DCIS, I completed the Criminal Investigator Training Program ("CITP") and the DCIS Special Agent Basic Training Program at the Federal Law Enforcement Training Center ("FLETC") in Glynn County, Georgia. As a result of my training and experience, I have become familiar with the methods used in conducting criminal investigations and arrest and search techniques. I am authorized to investigate violations of the laws of the United States with the authority to execute warrants issued by the United States.

2. I am the lead case agent in an investigation by a grand jury in the Southern District of Florida, conducted by DCIS and the United States Department of Justice, Antitrust Division, of fraud and kickbacks related to the sale of fuel and related products and services by fuel brokers in the airline industry.

3. I submit this affidavit in support of a complaint and arrest warrant for Sean E. Wagner. The proposed complaint charges Wagner with participating in a conspiracy to commit offenses against the United States, to wit, to violate Title 18, United States Code, Sections 1343 (wire fraud) and 1346 (theft of honest services), in violation of Title 18, United States Code, Section 1349 (conspiracy), from at least as early as December 2005 and continuing through at least August 2009 ("the relevant period").

4. The information contained in this affidavit is based on my personal knowledge and observations accumulated during the course of this investigation, on information I obtained during interviews, on information conveyed to me by other law enforcement personnel, on my review of documents and interview reports, and on physical evidence. I submit the affidavit for the limited purpose of establishing probable cause in support of this application for a complaint and an arrest warrant, and thus, it does not contain every fact known to me or the United States. Additionally, unless otherwise noted, wherever in this affidavit I assert that an individual made a statement, that statement is described in substance, and in part, and is not intended to be a verbatim recitation of the entire statement.

I. Evidence Establishing Probable Cause

A. Overview

5. DCIS and the United States Department of Justice are investigating fraud and kickback payments in the airline fuel supply industry. During the relevant period, defendant Wagner was the effective owner and operator of two aviation fuel companies, Company A and Company B ("Companies A/B"), located in Sunrise, Florida within Broward County, Florida. Companies A/B were fuel brokers, essentially middlemen, that purchased fuel from suppliers, such as ExxonMobil and Texaco, and resold it to airlines at a markup.

6. During the relevant period, Companies A/B provided airline fuel and related products and services to charter airline companies, including Ryan International Airlines ("Ryan"). Ryan was an entity with its principal place of business in Rockford, Illinois. Ryan provided air passenger and cargo services for corporations, private individuals, and the United States government. During the relevant period, a significant portion of Ryan's business consisted of transporting personnel and cargo for the United States Department of Defense and the United States Department of Homeland Security on domestic and international flights.

7. During the relevant period, Wayne Kepple maintained a residence in Palm Beach County, Florida. Kepple was the Vice President of Ground Operations for Ryan. As part of his responsibilities, he contracted with providers of goods and services on behalf of Ryan and approved the invoices submitted by those providers to Ryan for payment. Kepple had a fiduciary duty to act honestly and faithfully in all business dealings with Ryan and to do business in Ryan's best interests. Kepple had a duty to inform Ryan about any personal benefit not provided by Ryan, including kickbacks or commission payments, that he received or expected to receive from working on any of Ryan's business transactions.

8. It was a part and an object of the conspiracy that Wagner, Kepple, Companies A/B, and others, knowingly devised and intended to devise a scheme and artifice to defraud and deprive Ryan of the honest and faithful services of Kepple by making kickback payments to Kepple and concealing material information from Ryan. For the purpose of executing such scheme and artifice to defraud and deprive, and attempting to do so, Wagner did transmit and cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, and sounds, in violation of Title 18, United States Code, Sections 1343, 1346, and 1349.

2

9. In his capacity as an employee of Ryan, Kepple provided favorable treatment to Wagner and Companies A/B, including continuing to award business to Wagner and Companies A/B in exchange for kickback payments. Kepple foresaw or reasonably should have foreseen that Ryan might suffer an economic harm as a result of the breach of his fiduciary duty to Ryan.

10. In November 2011, Kepple pled guilty in the Southern District of Florida to three counts of conspiracy to commit honest services wire fraud in violation of Title 18, United States Code, Sections 1343, 1346, and 1349 and three substantive counts of wire fraud in violation of Title 18, United States Code, Sections 1343 and 1346. One of the conspiracies to which Kepple pled guilty involved receiving kickback payments from Wagner, Companies A/B, and others in exchange for Kepple awarding Ryan contracts for fuel and other services to Companies A/B, beginning at least as early as October 2005 and continuing through at least August 2009.

11. During the relevant period, James Murphy worked as a corporate bookkeeper for Companies A/B. In August 2011, Murphy pled guilty in the Southern District of Florida to one count of conspiracy to commit honest services wire fraud in violation of Title 18, United States Code, Sections 1343, 1346 and 1349 and one substantive count of wire fraud in violation of Title 18, United States Code, Sections 1343 and 1346. The conspiracy to which Murphy pled guilty involved Wagner, Companies A/B, and others in a scheme to pay kickbacks to Kepple in exchange for Kepple awarding Ryan contracts for fuel and other services to Companies A/B, beginning at least as early as October 2005 and continuing through at least September 2008.

B.   Evidence of Conspiracy

1.   Evidence from Co-Conspirators

12. I have personally interviewed Kepple and have reviewed reports from his other interviews with law enforcement agents. During the course of the interviews, Kepple described his responsibilities at Ryan and stated that he had final authority in selecting fuel suppliers for Ryan and in determining the prices Ryan paid for fuel. Kepple stated that he had a fiduciary duty to act honestly and faithfully in all business dealings with Ryan. Kepple described an agreement he entered into with Wagner in which Wagner agreed to provide kickback payments to Kepple in exchange for Kepple awarding Ryan fuel and other service contracts to Companies A/B.

13. Kepple described communications he had with Wagner and others at Companies A/B regarding payments he was owed and various ways to facilitate those payments. Kepple stated that Wagner was his primary point of contact at Companies A/B for securing business and discussing kickback

3

payments. Kepple described receiving money from Wagner and Companies A/B in the form of checks, bank wire transfers, cash, and gift cards. Kepple stated that on multiple occasions Wagner hand delivered cash payments to him. Kepple stated that all of the payments in the form of checks, bank wire transfers, cash, and gift cards he received from Wagner and Companies A/B were kickbacks. Kepple further stated that the payments received from Wagner and Companies A/B were described as commissions even though he had no legitimate reason to receive commissions from Companies A/B or any company other than Ryan.

14. I have personally interviewed Murphy and have reviewed reports of his other interviews with law enforcement agents. During the course of the interviews, Murphy described his position and responsibilities while working at Companies A/B, which included facilitating payments to Kepple. Murphy stated that Wagner was the effective owner, set the fuel prices, and had final decision making authority with respect to Companies A/B. Murphy stated that he received communications from Kepple regarding money that Kepple believed Kepple was owed and that Murphy sent money to Kepple at the direction of Wagner. Murphy described kickback payments made to Kepple by himself, Wagner, Companies A/B, and others in the form of checks and wire transfers, all authorized by Wagner.

15. I have personally interviewed another former employee, Co-Conspirator 1 ("CC-1"), of Companies A/B and have reviewed reports of his other interviews with law enforcement agents. During the course of the interviews, CC-1 described his participation in a scheme to provide kickback payments to Kepple in exchange for Kepple awarding Ryan fuel and other service contracts to Companies A/B. CC-1 described Wagner as the effective owner of Companies A/B with final decision making authority. CC-1 stated that he, Wagner, Companies A/B, and others paid kickbacks to Kepple in the form of wire transfers and cash. CC-1 stated that at some point, the use of wire transfers was discontinued in favor of cash payments to avoid leaving a paper trail. CC-1 further stated that CC-1 observed Wagner hand Kepple cash in person on at least one occasion.

2. Documentary Evidence

16. In August 2009, DCIS executed a search warrant, seizing corporate records from Companies A/B. I have reviewed these records and other records obtained during this investigation. According to these materials, from at least as early as December 2005 until at least August 2009, Wagner, Companies A/B, and others made kickback payments to Kepple totaling more than $200,000 in the form of checks, wire transfers, gift cards, and cash. Members of the conspiracy maintained detailed records, including spreadsheets and e-mails, that described the amounts of money

4

Kepple was owed and paid during the course of the conspiracy. Based on my review of these and other records, from December 2005 to August 2008, Wagner, Companies A/B, and others made at least 26 payments to Kepple by check and wire transfer in amounts ranging from $500 to $10,000, totaling over $88,000. From October 2008 to August 2009, Wagner, Companies A/B, and others made at least 14 cash payments to Kepple in amounts ranging from $1,000 to $12,000.

17. I have reviewed records for a bank account associated with Kepple. Based on these records, Kepple received bank statements to his residence in Lake Worth, Florida within Palm Beach County. Furthermore, Kepple made multiple transactions at a branch location in Lake Worth, Florida within Palm Beach County, including depositing to his account a check from Company A for $5,000 on or about December 12, 2005, and a check from Company B for $1,500 on or about May 24, 2007.

18. I have reviewed e-mails between Wagner and Kepple discussing kickback payments owed to Kepple and confirming the kickback payments made to Kepple. I have also reviewed corresponding bank records, checks, and spreadsheets that supported the kickback payments described in the e-mail correspondence between Kepple and Wagner.

19. I have reviewed a copy of a confirmation of a wire transfer in the amount of $5,000 on August 27, 2008, from Company B's bank account in Sunrise, Florida to a bank account associated with Kepple with notations that the payment was for June and July 2008 commissions from Companies A/B. The records show that for this transaction the funds went through an intermediary bank in Charlotte, North Carolina to a bank in Jacksonville, Florida. I have also reviewed a handwritten note dated August 27, 2008, bearing Wagner's initials, that detailed the June and July 2008 commissions from Companies A/B to Kepple totaling $5,000.

20. I have reviewed records showing a purchase on November 5, 2008, through the American Express internet website of $5,000 in American Express gift cards. The records show that the purchase of the gift cards was billed to Wagner's address in Davie, Florida and that Kepple was the intended recipient with a shipping address in Loves Park, Illinois. I have reviewed a spreadsheet titled "WK Commission Recap" that was seized from Companies A/B which detailed the kickback payments to Kepple including dates, amounts due, payments made, balances, and notes. An entry on that spreadsheet showed that a $5,000 payment was made to Kepple in the form of "Amex Gift Cards" on November 5, 2008.

21. I have reviewed records showing a check from Company B in the amount of $5,000 was cashed on May 12, 2009, and on that same day, a package was sent by FedEx Priority Overnight from Company B in Sunrise, Florida to Kepple in Loves Park, Illinois. An entry in the spreadsheet titled "WK Commission Recap" showed that a $5,000 payment was made to Kepple on May 12, 2009, and the note associated with that payment stated "Cash – FedEx."

22. Based upon the foregoing facts, I believe probable cause exists to assert that beginning at least as early as December 2005 and continuing through at least August 2009, in Palm Beach and Broward Counties, in the Southern District of Florida and elsewhere, defendant Wagner participated in a conspiracy to commit offenses against the United States, to wit, to violate Title 18, United States Code, Sections 1343 (wire fraud) and 1346 (theft of honest services), in violation of Title 18, United States Code, Section 1349 (conspiracy).

FURTHER YOUR AFFIANT
SAYETH NAUGHT.

_____
Robert C. Koons, Special Agent
DCIS, Department of Defense

Sworn to and subscribed before me this ___ day of July, 2013, in West Palm Beach, Florida.

_____
The Honorable James M. Hopkins
United States Magistrate Judge